**Christopher Lundberg**, OSB No. 941084
Email: clundberg@hk-law.com
**Matt Malmsheimer**, OSB No. 033847
Email: mmalmsheimer@hk-law.com
**HAGLUND KELLEY LLP**
200 S.W. Market Street, Suite 1777
Portland, Oregon 97201
Phone: (503) 225-0777
Facsimile: (503) 225-1257

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### (Portland Division)

| | |
|---|---|
| **JEDEDIAH GORDON,** an individual,<br><br>Plaintiff,<br><br>v.<br><br>**SHIMADZU USA MANUFACTURING, INC.**, an Oregon corporation,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12112 & 12203 and Oregon's Antidiscrimination Against Persons with Disabilities Law, ORS 659A.109, 112 & .118 – Failure to Accommodate and Retaliation<br><br>Jury Trial Demanded |

### JURISDICTION AND VENUE

1.     This Court has original jurisdiction over Plaintiff's federal statutory claims pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C § 1367 because the claims have a common nucleus of operative facts and are thus part of the same case or controversy.

Page 1 – COMPLAINT

2.      Venue is proper in the District of Oregon Portland Division pursuant to 28 U. S. C. § 1391(b)(1) because Defendant Shimadzu USA Manufacturing, Inc. ("Shimadzu"), is the sole defendant in this action and a resident of the State of Oregon with its principal place of business in Portland.

## PARTIES

3.      Plaintiff Jedediah Gordon is an individual and a resident of Oregon.  Plaintiff suffers from a severe hearing impairment that substantially limits his ability to hear.

4.      Defendant Shimadzu USA Manufacturing, Inc., ("Shimadzu") is an Oregon corporation.  At all times material, it was doing business within the State of Oregon and in this judicial district, and it operated by and through its officers, directors, employees, agents, and representatives, who were acting within the scope of their authority and in furtherance of Defendant's business interests.

5.      Defendant employs not less than 15 persons and has employed not less than 15 persons for each working day in at least 20 calendar weeks in this or the immediately preceding calendar years.

## ADMINISTRATIVE EXHAUSTION

6.      Plaintiff filed a complaint with the Civil Rights Division of Oregon's Bureau of Labor and Industries ("BOLI") on April 8, 2016.  That filing was dual filed with the EEOC.

7.      BOLI dismissed Plaintiff's administrative complaint and issued Plaintiff a right-to-sue letter on April 7, 2017.

Page 2 – COMPLAINT

## FACTUAL ALLEGATIONS

8.      Plaintiff Jedediah Gordon began working for Defendant Shimadzu on May 28, 2014 as an electro-mechanical assembler, with an initial wage of $12.00 per hour working an eight-hour shift.

9.      During Mr. Gordon's initial employment, Jennifer Cobb, Shimadzu's Senior Human Resources Generalist, asked if he could "read lips," acknowledging that Mr. Gordon has a hearing impairment.  Mr. Gordon responded by saying that, while he could "kind of " read lips, everyone's mouth moves differently, indicating that it was not a sure way for him to understand what people were saying.

10.      Shimadzu required its employees to attend monthly meetings and daily morning meetings.  At the daily morning meetings, the assembly line leader would make announcements regarding work schedules, daily work issues, quotas, etc.

11.      On May 29, 2014, Mr. Gordon's second day of work, he told his immediate supervisor, Maria Jacobo, that he was unable to hear her during the morning meeting and requested that she write down the information that was discussed during those meetings.  Ms. Jacobo did not comply with that request.

12.      In order to gather the information presented at the morning meetings, Mr. Gordon depended on his coworkers to write what Ms. Jacobo or the assembly line leader discussed during the morning meetings on the white board at the end of the production line.  Mr. Gordon also met with his coworker, Tyler Valentine, one-on-one after the morning meetings to make sure that he received all of the pertinent information that was discussed.

Page 3 – COMPLAINT

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

13.    Mr. Gordon was absent from work from March 21, 2015 through June 8, 2015 due to an off-the-job injury second to a motor vehicle accident.

14.    After his return to work, Mr. Gordon received his first annual performance review.  During that review, the Production Manager, David Cawood, informed Mr. Gordon that he was getting a pay raise from $12.00 to $12.60 per hour due to his work speed, accuracy and positive attitude.

15.    Shortly after receiving that raise, Mr. Gordon met with Ms. Jacobo and explained that he could not hear her speak during the morning meetings.  Mr. Gordon again requested that Ms. Jacobo have someone write down pertinent information or that she pull him aside for face-to-face communication after the meetings. Mr. Gordon made these verbal requests for accommodation rather than filing a formal complaint to HR, out of professional courtesy.

16.    Despite his requests for accommodations, Ms. Jacobo only had one-on-one meetings with Mr. Gordon for a few weeks and then stopped.  As a result, Mr. Gordon continued to face obstacles with receiving information discussed during the monthly and morning meetings.

17.    Subsequently, Human Resources informed Mr. Gordon that his verbal requests to Ms. Jacobo "did not count" because he did not make a written request directly to Human Resources.

18.    In August 2015, Mr. Gordon made a verbal complaint to Ms. Cobb in Shimadzu's HR Department that Ms. Jacobo did not inform him of the August monthly meeting.  Mr. Gordon explained that Ms. Jaobo and he had an ongoing communication problem due to Mr. Gordon's hearing impairment.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

19.     The next week, Mr. Gordon met with Ms. Jacobo and Mr. Cawood where they asked what kinds of accommodations Mr. Gordon would need going forward.  Mr. Gordon reiterated that he needed to receive written information or have Ms. Jacobo talk with him one-on-one after the morning meetings.  Mr. Cawood agreed to have the "highlights" of the morning meetings written down for me.

20.     On September 22, 2015, Mr. Gordon had a meeting with Ms. Jacobo and Mr. Cawood where they claimed that he had a "bad attitude" at work.   During this meeting, Mr. Cawood accused Mr. Gordon of not wanting to work at Shimadzu.  Mr. Cawood also told Mr. Gordon that if he "didn't like it, then there's the door."  Ms. Jacobo told Mr. Gordon that she "didn't know what else to do" to accommodate me.

21.     On October 15, 2015, Mr. Gordon submitted an official request for accommodation form to Shimadzu.  The next day, he had a meeting with Ms. Cobb and Bill Irvine, the Controller of Shimadzu, where they gave Mr. Gordon a letter acknowledging receipt of his written request for accommodation and asked for additional paperwork from his treating doctor. The deadline for the additional paperwork was October 30, 2015.

22.     In response to Mr. Gordon's request for accommodations, Shimadzu began taking corrective action against him.  On October 21, 2015, Mr. Gordon received a letter from Ms. Cobb and Mr. Irvine entitled, "Corrective Action and Response to Jedediah's memo received by Human Resource on 10/15/15."  The purpose of the letter was "to document, from HR's perspective, what occurred to date, clarify misunderstandings, to inform [Mr. Gordon] of SUM's expectations going forward, and potential consequences if expectations are not met."

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

23.    Mr. Gordon had already received a verbal warning on September 22 for his alleged "bad attitude" and, therefore, the corrective action was a result of his complaint that Shimadzu failed to accommodate his hearing disability.

24.    Over the course of his employment, Mr. Gordon experienced a biased work environment based on his hearing disability and was subjected to pervasive and hostile comments and harassing treatment in retaliation for his requests for accommodations.

25.    The next day, on October 22, 2015, Mr. Gordon asked Stan Dean, the backup assembly line lead, if Ms. Jacobo had said anything important during the morning meeting.   As Mr. Dean was explaining what was discussed during the morning meeting, Ms. Jacobo approached the two men, seeming annoyed and irritated.  Ms. Jacobo stated that she could not have one-on-one meetings with Mr. Gordon every day and stated that, "if HR doesn't tell me to do something by adding it to my job description, I don't have to do it."

26.    Mr. Gordon explained that he had recently asked Human Resources to document his hearing disability and that he expected the doctor would confirm that it was "worse than what [Mr. Gordon was] making it out to be."  Ms. Jabobo misunderstood that statement as a threat that "everything would be worse for us," and that he was implying that the doctor would require her to write everything down.

27.    The next day, on October 23, 2015, Shimadzu terminated Mr. Gordon's employment.

28.    In its termination letter to Mr., Gordon, Shimadzu explained that: "After repeated attempts by your leads and management to ask for your cooperation, your lack of engagement in yesterday's morning meeting was found to be unacceptable.  In addition, your statement to your

Page 6 – COMPLAINT

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

lead that things would be worse for us after you meet with your doctor, was determined to be disrespectful."

29.     Despite the fact that Shimadzu had terminated his employment, Mr. Gordon faxed the forms from his doctor on October 26, 2015, which was several days before the deadline of October 30, 2015.

30.     Mr. Gordon has attempted to mitigate his damages.

31.     As a result of Shimadzu's unlawful discrimination and termination described above, Mr. Gordon has suffered economic damages in an amount to be specifically proven at trial, not to exceed $110,865.  Mr. Gordon has also suffered noneconomic damages in the form of stress, humiliation, anxiety and emotional distress in an amount to be to be specifically proven at trial, not to exceed $350,000.

## CLAIMS FOR RELIEF
## FIRST CLAIM FOR RELIEF

(Violation of Americans with Disabilities Act – Failure to Accommodate Known Disability)

32.     Plaintiff Jedediah Gordon realleges the allegations set forth above, and in addition alleges the following.

33.     As set forth above, Mr. Gordon is a qualified individual with a disability within the meaning of the Americans with Disabilities Act.

34.     As set forth above, Shimadzu was aware of Mr. Gordon's disability.

35.     As set forth above, Shimadzu failed to provide Mr. Gordon with a reasonable accommodation of his known disability.

36.     As a result of Shimadzu's failure to accommodate Mr. Gordon's known disability, Mr. Gordon has suffered noneconomic damages in an amount to be specifically determined by a jury at trial not to exceed $50,000.

Page 7 – COMPLAINT

37.    In addition to any compensatory relief, Mr. Gordon is entitled to his reasonable attorney fees under 42 U.S.C. § 12205.

## SECOND CLAIM FOR RELIEF

(Violation of ORS 659A.112– Failure to Accommodate Known Disability)

38.    Plaintiff Jedediah Gordon realleges the allegations set forth above, and in addition alleges the following.

39.    As set forth above, Mr. Gordon is a qualified individual with a disability within the meaning of ORS 659A.104.

40.    As set forth above, Shimadzu was aware of Mr. Gordon's disability.

41.    As set forth above, Shimadzu failed to provide Mr. Gordon with a reasonable accommodation of his known disability.

42.    As a result of Shimadzu's failure to accommodate Mr. Gordon's known disability, Mr. Gordon has suffered noneconomic damages in an amount to be specifically proven at trial not to exceed $50,000.

43.    In addition to any compensatory relief, Mr. Gordon is entitled to his reasonable attorney fees under ORS 659A.885.

## THIRD CLAIM FOR RELIEF

(Violation of Americans with Disabilities Act – Retaliation)

44.    Plaintiff Jedediah Gordon realleges the allegations set forth above, and in addition alleges the following.

45.    As set forth above, Mr. Gordon engaged in protected activity by insisting upon reasonable accommodations for his known disability and by opposing Defendant's discriminatory practices including its failure to reasonably accommodate his disability.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

46.    As set forth above, Defendant was aware of Mr. Gordon's protected activity and retaliated against him on account of that protected activity by disciplining him, subjecting him to pervasive and hostile comments in response to his requests for accommodation and ultimately terminating his employment.

47.    Defendant's retaliation would dissuade a reasonable person from engaging in protected activity.

48.    As a result of this retaliation, Mr. Gordon has suffered economic in an amount to be specifically proven at trial not to exceed $110,865 and noneconomic damages in an amount to be specifically proven at trial not to exceed $300,000.

49.    In addition to any compensatory relief, Mr. Gordon is entitled to his reasonable attorney fees under 29 U.S.C. § 794a(2)(b).

### FOURTH CLAIM FOR RELIEF
(Violation of ORS 659A.109– Retaliation)

50.    Plaintiff Jedediah Gordon realleges the allegations set forth above, and in addition alleges the following.

51.    As set forth above, Mr. Gordon engaged in protected activity by insisting upon reasonable accommodations for his known disability and by opposing Defendant's discriminatory practices including its failure to reasonably accommodate his disability.

52.    As set forth above, Defendant was aware of Mr. Gordon's protected activity and retaliated against him on account of that protected activity by disciplining him, subjecting him to pervasive and hostile comments in response to his requests for accommodation and ultimately terminating his employment.

Page 9 – COMPLAINT

53.    Defendant's retaliation would dissuade a reasonable person from engaging in protected activity.

54.    As a result of this retaliation, Mr. Gordon has suffered economic in an amount to be specifically proven at trial not to exceed $110,865 and noneconomic damages in an amount to be specifically proven at trial not to exceed $300,000.

55.    In addition to any compensatory relief, Mr. Gordon is entitled to his reasonable attorney fees under ORS 659A.885.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jedediah Gordon prays for relief as follows:

1.    For judgment in his favor;

2.    For compensatory damages in an amount to be specifically proven at trial not to exceed $460,865;

3.    For his reasonable attorney fees incurred in pursuing this action;

4.    For his costs and disbursements; and

5.    For other relief that the Court deems to be just and equitable under the circumstances.


DATED this 5th day of July, 2017.

**HAGLUND KELLEY, LLP**

By:s/Christopher Lundberg
Christopher Lundberg, OSB No. 941084
clundberg@hk-law.com
Matt Malmsheimer, OSB No. 033847
mmalmsheimer@hk-law.com

Attorneys for Plaintiff


Page 10 – COMPLAINT